SO ORDERED.

SIGNED this 26th day of September, 2013.



Dale L. Somers
United States Bankruptcy Judge

___

For on-line use but not print publication
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br><br>DAVID TODD LEONARD and<br>MICHELLE LEIGH LEONARD,<br><br>        DEBTORS. | CASE NO. 09-20190<br>CHAPTER 7 |
| JANICE POSL-BENDSEN, by John R. Kurth, guardian and conservator; and JOHN R. KURTH, Trustee of the Janice Posl-Bendsen Revocable Living Trust,<br><br>        PLAINTIFFS<br><br>v.<br><br>DAVID TODD LEONARD and<br>MICHELLE LEIGH LEONARD,<br><br>        DEFENDANTS. | ADV. NO. 09-6043 |

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

In this adversary proceeding creditors Janice Posl-Bendsen, by John R. Kurth, guardian and conservator, and the Trustee of the Janice Posl-Bendsen Revocable Living Trust object to the discharge of their claim against Debtors David Todd Leonard and Michelle Leigh Leonard under 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6) and also seek an order denying discharge under 11 U.S.C. §§ 727(a)(3), (a)(4), and (a)(5). Plaintiffs, who appear by Patrick E. Henderson, move for summary judgment. Debtors, who appear pro se, oppose the motion. The Court has jurisdiction.[1] For the reasons discussed below, the Court denies the motion.

**UNCONTROVERTED FACTS.**

In support of the motion for summary judgment, Plaintiffs rely upon the bankruptcy pleadings, the depositions of the Debtors which are included in the record,[2] and the exhibits to those depositions. Debtors deposition testimony is uncontroverted.[3] No deposition and no statement has been provided by Plaintiff, Janice Posl-Bendsen (Janice). She is alleged to be a 65 year old woman whose health has been deteriorating over the last several years. John R. Kurth, Janice's son, has been appointed guardian and

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (J). There is no objection to venue or jurisdiction over the parties.

[2] Dkts. 115 and 116.

[3] The Court observes that if this matter proceeds to trial, it is very unlikely that Plaintiffs will prevail on their § 523 claims if they continue to rely almost exclusively on Debtors' testimony.

2

conservator of Janice by order of the District Court of Atchison County, Kansas.[4] Apparently the appointment was in 2008, after the events which are issue in this proceeding.[5]

Plaintiffs are entitled to summary judgment only if Debtors' uncontroverted testimony show that judgment should be entered in Plaintiffs' favor as a matter of law. The following is a summary of the events which give rise to this proceeding as testified to by the Debtors.

Debtor David Todd Leonard (David) is referred to by Janice as Todd Leonard. He was born in 1968. After working as a fitness trainer, he began employment in the financial industry in 2002. He continued in that employment at various businesses, including Countrywide Financial, until May 2007, when he began managing Janice's assets on a full time basis. David and his wife Michelle Leigh Leonard (Michelle) have four children. Michelle was not employed outside the home, but she assisted with the administration of David's investment operations.

Janice is David Leonard's second cousin. They had occasional contact while children. In 2000, the relationship was reestablished, and Janice began visiting Debtors and spending time with Debtors and their children. Janice started joining in traditional family functions, such as Thanksgiving, Christmas, and birthdays. Janice was very generous, giving the Leonard family gifts initially worth hundred of dollars and then

---

[4] Dkt. 1 at ¶¶ 8-11.

[5] See Dkt. 1 at ¶ 11, stating that the Atchison County District Court case number is 08 PR 55.

increasing to gifts worth thousands of dollars. For example, for Easter 2004, she gave the family members Easter eggs with $10,000 checks in them. She gave a sapphire bracelet to Michelle Leonard and loaned her other jewelry and a fur coat.

In 2003, Janice inherited stock worth approximately 6 million dollars from her mother, but David did not know of the inheritance until 2005, when he started to become actively involved in managing Janice's assets. From 2005 through 2007, several entities were formed and accounts were set up to manage both Janice's and Debtors' assets.

In September 2005, Leonard & Bendsen, LLC, which was owned by Janice, was formed to invest a small portion of her assets. In November 2005, a MasterTrader.com account was set up for day trading of the Leonard & Bendsen property. David managed the account. Initially it had a balance of over a hundred thousand dollars. By September 30, 2006, the balance was $32.91.[6]

On May 31, 2006, Janice executed a Revocable Living Trust prepared by an attorney. Janice is the sole trustee. The trust provides that upon Janice's death, the balance of the trust assets remaining after payment of trust obligations and taxes shall be distributed to "Todd Leonard and Michelle Leonard, or the survivor of the two of them if one of them dies before" Janice. Apparently at this time, the majority of Janice's assets were held in an account at Merrill Lynch. Also on May 31, 2006, Janice executed a General Durable Power of Attorney naming Todd Leonard as her attorney-in-fact. David

---

[6] Dkt. 116 (Michelle Leonard depo.) at 14.

4

Case 09-06043    Doc# 196    Filed 09/26/13    Page 4 of 19

denies that any of the actions which are the subject of this proceeding were taken by him under the powers granted to him by the power of attorney.

Starting in 2005 and continuing until August 2008, checks signed by David on accounts holding Janice's property were written to Fitness Quest, LLC, a fitness business owned in part by David. By these investments, Janice was not purchasing an interest in the business. Rather, she directed that the checks be written so David could invest in the business, which Janice wanted to succeed. Fitness Quest eventually filed for bankruptcy.[7]

In late 2006, Janice had a irreconcilable conflict with her advisors at Merrill Lynch, who had been attempting to restrain Janice's reckless spending. On December 14, 2006, an account was established at MasterTrader.com in the name of Janice Posl-Bendsen, Janice Posl-Bendsen Revocable Living Trust. David Leonard is shown as a joint customer on the account documentation.[8] Account statements were addressed as follows:

> Janice Posl-Bendsen
> Janice Posl-Bendsen Rev. Living Trust
> d/t/d 05/31/2005
> Janice Posl-Bendsen & Todd Leonard TTEES.[9]

On January 31, 2007, the balance of the trust MasterTrader.com account was $2,941,248.76, which was the value on that date of the assets which had been held in the

---

[7] *Id*. at 13.

[8] Dkt. 168.

[9] *E.g*., Dkt. 140.

Merrill Lynch account. By November 30, 2007, the value of the account was $655,464.22. David attributes the majority of the loss in value of investments to Janice's decisions regarding the holding of the stock of CROCS, but details as to the investment activities and withdrawals from the account are not provided.

David also established Fit Trade, LLC for the purpose of trading stocks. David was the only member. Debtor testified that the funds in the account were gifts from Janice. Ultimately, the investments were a total loss, and the account was closed.

The Complaint alleges the following transfers to Debtors of Janice's assets by checks signed by David or by wire transfers: Checks to David and Michelle totaling at least $227,000; transfers of at least $60,000 to Fitness Quest; checks totaling $195,000 and a wire transfer of $55,000 to Fit Trade, LLC; transfers of $48,000 to Debtors' four children; payment of $500 to Lynda Leonard; payment of $2,500 to Anthony Wilson, and payment of $36,754.82 to Lori Larson, and payment of $18,039.92 to various vendors. These transfers total $642,794.74.

Debtors admit that these transfers were made with the direct permission and or direct instruction of Janice. As to transfers to Debtors, when the Merrill Lynch account was closed, David agreed to manage Janice's assets in exchange for Janice providing $10,000 per month living expenses and a bonus based upon performance. Michelle also was significantly involved by providing personal support and companionship to Janice. Payments to Lori Larson were for her work in organizing Janice's financial records and

6

providing the information necessary for the preparation of three years worth of past due tax returns.

Debtors' relationship with Janice was terminated by Janice in November 2007 or earlier, and Debtors have not seen her since that time. On August 8, 2008, Janice filed suit against the Debtors in the District Court of Johnson County, Kansas. She alleged that pursuant to the Power of Attorney, David took control of plaintiff's funds for the alleged purpose of investing and reinvesting the funds for Janice's benefit, but breached his fiduciary duties, by among other things, misappropriating $582,377.00 of Janice's funds. Causes of action for breach of fiduciary duty, gross negligence, civil conspiracy, and conversion were alleged. Debtors did not respond to the Petition. An Order of Default Judgment was entered on October 10, 2008. Debtors were held jointly and severally liable for $582,377, plus interest and costs. In addition, judgment was entered in favor of Janice against David for $550.00 plus interest, and David was ordered to provide an account of all of his transaction regarding Janice's accounts from January 1, 2007 to the date of the judgment. In this action, Plaintiffs do not rely upon any collateral estoppel effect of the prior judgment.

Debtors filed for relief under Chapter 7 on January 29, 2009. Debtors filled out an information sheet at the request of their counsel, Jeff Koons, and met with him four times. Mr. Koons completed the schedules. Copies were given to Debtors when they signed them, but Debtors did not carefully review them. In response to question 1 of the Statement of Financial Affairs (SOF), income from employment, trade, or business,

7

Debtors listed $361,191 for 2007 and approximately $300,000 for 2008. David testified that the 2007 income was the amount Debtors received from Janice.[10] For the same year, Debtors federal tax return show income from wages of $36,191 and plus other income totaling less than $100,000. There was no income reported in response to SOF question 2, income from other sources. SOF question 18 requests information about the nature, location and name of businesses. Debtors' SOF lists Fitness Quest and states that David holds a 48% interest and two other individuals own 51% and 1% respectively. The SOF does not mention Leonard & Bendsen, LLC, which David contends was owned 100% by Janice. Fit Trade, LLC, which Debtor contends was his business, the assets of which were given to him by Janice, was not listed under question 11, closed financial accounts, or question 18, businesses. Although there was testimony that Janice's funds had been used to buy computer equipment, it was not included under SOF 14, property held for another person, or on Schedule B, personal property. In addition, although there was testimony the funds provided by Janice were used to buy two bicycles and that Debtor owned two additional bicycles, the bicycles were not included in Schedule B, personal property. In general, Debtors declined to testify regarding the particulars of the schedules, stating that they wanted to review the issues with the attorney who prepared the schedules.

---

[10] Dkt. 115 (David Todd Leonard depo.) at 136.

**THE ADVERSARY COMPLAINT.**

Plaintiffs seek to except their claim, in an unspecified amount, against Debtors from discharge under various subsections of § 523 and to deny Debtors a discharge under various subsections of § 727. The Complaint alleges that in 2007, David undertook to serve as Trustee of the Janice Posl-Bendsen Revocable Living Trust. Debtors admit this allegation, but state that Debtor was appointed by Janice. The Complaint then alleges the transfers from the trust in the total amount of $642,794.74 as enumerated above. Debtors admit to all of the alleged transfers, but respond that they were made with the direct permission or direct instruction of Janice. Plaintiffs also allege that David engaged in a pattern of reckless stock trading where he lost significant funds from the revocable trust (an allegation which Debtors deny), but no amount is specified. In Count 1, Plaintiffs allege that David breached his fiduciary duty to Janice by writing checks to himself, his family, and his friends and seek judgment for at least $585,294.74. The Complaint in Counts II thorough IV then alleges that Debtors' debt to Plaintiffs, in an amount not specified, is nondischargeable under §§ 523(a)(2)(money and property obtained by false pretenses, false representation, or actual fraud); (a)(4) (fraud while acting in a fiduciary capacity, embezzlement, or larceny); and (a)(6) ( willful and malicious injury to the property of another). In counts V through VII, Plaintiffs allege that Debtors should be denied a discharge under §§ 727(a)(3) (concealment, destruction, mutilation, falsification, or failure to keep or preserve recorded information from which Debtor's financial condition or business transactions might be ascertained); (a)(4) (making a false oath or

9

Case 09-06043    Doc# 196    Filed 09/26/13    Page 9 of 19

account knowingly and fraudulently in or in connection with the bankruptcy case); and (a)(5) (failure to satisfactorily explain the loss of assets).

**DISCUSSION.**

> **A. If Plaintiffs seek summary judgment on their contention of a claim against Debtors under Count I, judgment is denied.**

Plaintiffs' motion is for summary judgment, not partial summary judgment, so the Court must address all counts, including Count I, even though it is not discussed in Plaintiffs' brief. Count I alleges a right to recover $585,294.74 from David for breach of fiduciary duty through writing checks on Janice's trust account without authority payable to himself, his family, his fiends, or his creditors. Although it is uncontroverted that David wrote the checks as alleged, it is also uncontroverted for purposes of summary judgment that Janice directed or authorized the transfers. Plaintiffs are not entitled to judgment on Count I.

> **B. Plaintiffs' motion for summary judgment on the objections to discharge of Plaintiffs' claim against debtors is denied.**

Exceptions to discharge are construed liberally in favor of the debtor.[11] To prevail on an objection to discharge, a creditor has the burden to prove its case by a preponderance of the evidence.[12]

> **1. The uncontroverted facts do not prove the elements required for exception to discharge under § 523(a)(2)(A).**

---

[11] 4 *Collier on Bankruptcy,* ¶ 523.05 at 523-21 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 16th ed. rev. 2013).

[12] *Grogan v. Garner*, 498 U.S. 279 (1991).

Section 523(a)(2)(A) excepts for discharge debts for money or property to the extent obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting a debtor's or insider's financial condition." In this case, there is no evidence of any false pretenses, false representations, or actual fraud. Summary judgment cannot be granted on denial of discharge under § 523(a)(2)(A).

**2. The uncontroverted facts do not prove the elements required for exception to discharge under § 523(a)(4).**

Section 523(a)(4) excepts from discharge a debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Plaintiffs rely upon the fiduciary relationship portion of the exception. "The existence of a fiduciary relationship under § 523(a)(4) is determined under federal law, ... [h]owever, state law is relevant to this inquiry."[13] "For purposes of section 523(a)(4), the definition of 'fiduciary' is narrowly construed, meaning that the applicable nonbankruptcy law that creates a fiduciary relationship must clearly outline the fiduciary duties and identify the trust property."[14] "[A]n express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4)."[15] Therefore, not all fiduciary relationships which exist under common law or state law rise to the level actionable under § 523(a)(4).

---

[13] *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367,1371 (10th Cir. 1996).

[14] 4 *Collier on Bankruptcy*, ¶ 523.10[1][d] at 523-73.

[15] *In re Young*, 91 F.3d at 1371.

11

"Under Kansas law, the elements necessary to create an express trust are: (1) an explicit declaration and intention to create a trust; (2) the transfer of lawful and definite property by a person capable of making transfer thereof; and (3) a requirement to hold the property as trustee for the benefit of a *cestui que trust* with directions as to the manner in which the trust funds are to be applied."[16] "Neither a general fiduciary duty of confidence, trust, loyalty, and good faith, nor an inequality between the parties' knowledge or bargaining power is sufficient to establish a fiduciary relationship for purposes of dischargeability."[17] "A technical trust differs from an express trust in that the intention of the parties is not relevant, and the parties' fiduciary obligations are imposed by law, not implied by law."[18]

The Court finds that Plaintiffs have not sustained their burden of proof to show a fiduciary relationship. When moving for summary judgment, Plaintiffs appear to be relying primarily upon the admissions of Debtors in their depositions that they were acting as fiduciaries, or trusted advisors and confidants, for Janice. But, as examined above, for purposes of dischargeability, the bankruptcy law requires an express or technical trust - more than a position of trust and confidence.

---

[16] *Jenkins v. IBD, Inc.*, 489 B.R. 587, 598 (D. Kan. 2013), *quoting In re Foy*, 2010 WL 2584193, *3 (Bankr. D. Kan. June 21, 2010).

[17] *In re Young*, 91 F.3d at 1372 (citiaitons omitted).

[18] *Jenkins v. IBD, Inc.*, 489 B.R. at 598.

12

The Complaint alleges that in 2007 David "undertook to serve as Trustee of the Janice Posl-Bendsen Revocable Living Trust,"[19] thereby apparently intending to allege the creation of an express trust. The uncontroverted facts establish that the transfers which are alleged to be the basis of the claim by Plaintiffs against Debtors were, at least for the most part, made from the account which was established on December 14, 2006 at MasterTrader.com in the name of Janice Posl-Bendsen, Janice Posl-Bendsen Revocable Living Trust. David and Janice are named as joint customers on the account documentation,[20] and the account statements name both Janice and David as trustees.

These facts do not satisfy the criteria for an express trust under Kansas law. First, the creation of the MasterTrader.com account does not evidence an explicit declaration and intention to create a trust. Second, the assets of the revocable trust were transferred to a MasterTrader.com account titled in the name of the trust; the assets were not transferred to David, the alleged trustee. Third, there is no evidence that Janice provided directions to David regarding the investments. Janice, as well as David, was a customer for the account, with the ability to direct investments. In addition, there is no basis in the record to find a technical trust.

---

[19] Dkt. 1 at ¶ 13. Plaintiffs do not rely upon the relationship created by the May 31, 2006 General Durable Power of Attorney naming David as Janice's attorney in fact and David denies having acted under the authority granted to him by that instrument. General powers of attorney have been held to create fiduciary relationships for purposes of dischargeability. *E.g., Collier v. Goepp (In re Goepp)*, 455 B.R. 388 (Bankr. D.N.J. 2011).

[20] Dkt. 168.

Further, assuming a fiduciary relationship between Janice and one or both Debtors, denial of discharge requires that the debt excepted from discharge for either fraud or defalcation while acting as a fiduciary. Fraud, for purposes of § 523(a)(6) "has generally been interpreted as involving intentional deceit, rather than implied or constructive fraud."[21] Plaintiffs provide no evidence of intentional deceit. The United States Supreme Court, in *Bullock v. BankChampaign, N.A.*,[22] recently held that defalcation for purposes of the exception to discharge requires an intentional wrong. It stated:

> Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent.[23]

Plaintiffs have provided no uncontroverted facts evidencing defalcation.

**3. The uncontroverted facts do not prove the elements required for exception to discharge under § 523(a)(6).**

Section 523(a)(6) excepts from discharge debts "for a willful and malicious injury by the debtor to another or to the property of another." An injury is malicious within this exception "if it was wrongful and without just cause or excuse."[24] Malicious conduct is

---

[21] 4 Collier on Bankruptcy, ¶ 523.10[1][a] at 523-71.

[22] *Bullock v. BankChampaign, N.A.*, __ U.S. __, 133 S.Ct. 1754 (2013).

[23] *Id.* at 1759.

[24] 4 Collier on Bankruptcy, ¶523.12[2] at 523-92.

14

more culpable than recklessness.[25] Willfulness refers to a deliberate and intentional act that necessarily leads to injury.[26] Plaintiffs have provided no evidence of willful and malicious injury to Janice's property.

**C. Plaintiffs' motion for summary judgment on the denial of discharge claims is denied.**

Grounds for denial of discharge are limited to those clearly expressed in the Code.[27] "The burden of proof for an objection to discharge is on the objector."[28]

**1. The uncontroverted facts do not prove the elements required for denial of discharge under § 727(a)(3).**

Section 727(a)(3) provides that a debtor shall be granted a discharge unless "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." "The purpose of the objection is to ensure documentation to permit an objective determination of the debtor's true financial status."[29] "[A] prima facie case under Code § 727(a)(3) may be made upon showing that (1) the debtor failed to maintain and preserve adequate

---

[25] *Id*. at 523-93, citing *In re Long*, 774 F.2d 875, 881 (8th Cir. 1985).

[26] *Id*., citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 365 (1977).

[27] 6 *Collier on Bankruptcy*, ¶ 727.01[1] at 727-7.

[28] *Id.*, ¶ 727.01[2] at 727-8.

[29] 4 William L. Norton, Jr., and William L. Norton III, *Bankruptcy Law & Practice 3d*, § 86:9 at 86-29 to 86-30 (Thomson Reuters/West 2013).

15

records, and (2) such failure makes it impossible to ascertain the debtor's financial condition and material business transactions."[30]

In the Complaint, Plaintiffs allege that Debtors withdrew and wrote checks for at least $585,294.74 from Plaintiff's trust account for their personal use or the benefit of their family, friends, and creditors but have failed to provide an accounting of these "expenditures."[31] The Court understands "expenditures" to be referring to the expenditures of the trust, not the expenditures of the Debtors. The predicate for denial of discharge is a *debtor's* failure to keep books from which the *debtor's* financial condition can be ascertained. It does not apply to these Debtors' alleged failure to maintain complete records as to the trust's financial condition and transactions.

### 2. The uncontroverted facts do not prove the elements required for denial of discharge under § 727(a)(4).

Section 727(a)(4)(A) provides that a debtor shall be granted a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or statement." A false statement or omission in a debtor's schedules may be sufficient for denial of discharge.[32] One commentator summarizes the applicable law as follows:

> Under current Official Bankruptcy Forms, the debtor is
> required to verify the completeness and accuracy of any

---

[30] *Id*. at 86-29.

[31] Dkt. 1 at ¶ 33.

[32] 6 *Collier on Bankruptcy*, ¶727.04[c] at 727-38.

16

schedule of assets, debts, or affairs filed in a case. However, since the failure to list an asset must be both knowing and fraudulent, mere inadvertence is not sufficient to establish an objection. Where there is a knowing failure to list a substantial asset, an inference of fraudulent intent may be drawn in the absence of mitigating circumstances. The failure to amend schedules to include omitted information concerning assets is a reckless indifference to the truth, which is equivalent to fraud.

The false oath or account must relate to a material matter. The failure to list a significant asset is the most frequently established basis for denying discharge under this section, and certainly satisfies the materiality element. Materiality under Code § 727(a)(4)(A) means that the statement must bear a relationship to the debtor's financial transactions or to the bankruptcy estate, concern the disclosure of assets, or relate to the disposition of assets. If there is a failure to list a valuable asset, materiality is established.[33]

Although the record evidences inaccuracies and omissions from Debtors' schedules, particularly their SOF, which were signed the Debtors under oath of completeness and accuracy, the uncontroverted facts do not evidence the elements necessary for denial of discharge. As alleged in Count VI of the Compliant, Debtors did not disclose funds transferred to them from the Plaintiff's trust in response to SOF question 2,[34] but Debtors in response to question 1 did disclose income from Plaintiffs. The amount is consistent with Debtors' testimony admitting to the receipt of the transfers alleged in Count I of the Complaint. The discrepancy between the income from Plaintiffs

---

[33] 4 *Norton Bankruptcy Law & Practice*, ¶ 86:11at 86-33 to 86-34.

[34] Dkt. 1 at ¶ 37.

17

disclosed in the SOF and the lesser amount reported in Debtors' 2007 federal income tax return raises questions of accuracy of the disclosures, but does not prove falsity. Debtor's interest in Fitness Quest, LLC was disclosed. Although Leonard and Bendsen, LLC was not mentioned in the SOF, Debtor testified that it was owned solely by Janice. Fit Trade, LLC also was not mentioned in the SOF, but Debtor testified that it, as well as Leonard and Bendsen, LLC had no value. The materiality of the omissions from the SOF is not established. Likewise, the materiality of the omissions from Schedule B of computer equipment and bicycles purchased with trust assets is not established.

In addition, Plaintiffs have not shown by uncontroverted facts that the inaccuracies and omissions were knowing and fraudulent. Debtors were represented by counsel when the schedules were prepared, but are presently *pro se*. When questioned about the schedules during their depositions, Debtors' responses did not establish that they acted either knowingly or fraudulently. Rather, Debtors recognized the need to consult with their former counsel before responding to detailed questioning as to the reasons for the manner in which the schedules were completed.

### 3. The uncontroverted facts do not prove the elements required for denial of discharge under § 727(a)(5).

Section 727(a)(5) provides that the court shall grant the debtor a discharge, unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." The uncontroverted facts do not include any evidence to support Plaintiffs'

allegation in Count VII of the Complaint for denial of discharge under this section. The Debtors' deposition testimony, the only evidence relied upon by Plaintiffs, did not address the Debtors' loss of assets.

**CONCLUSION.**

For the foregoing reasons, Plaintiffs' motion for summary judgment is denied as to all counts alleged in the Complaint.

**IT IS SO ORDERED.**

###